MARGARET KELLY, APPELLANT, v. JOHN O. H. PITNEY AND JOHN R. HARDIN, EXECUTORS, ETC., OF MARCUS L. WARD, DECEASED, RESPONDENTS.

Submitted March 26, 1923—Decided July 2, 1923.

1. Where the state of mind or intent with which 'any particular act is done, is a relevant fact and the subject of inquiry, declarations made by the person who does the act, and accompanying the act, and which illustrate or explain its character, are a part of the *res gestœ*, and are admissible in evidence.

2. An otherwise relevant declaration is not rendered incompetent by reason of the fact that the declarant is dead. His executors are entitled to the benefit of it, in a suit against them for a legacy, even though the declaration was in his favor.

3. In an action by a household servant to recover a legacy conditioned upon such servant being in testator's employ at the time of his death, an envelope (containing the will) with a signed statement inscribed thereon, in the handwriting of the testator, made on the day he permanently closed his house, to the effect that such servant that day left his employ, was admissible in evidence.

4. In an action to recover a legacy, where the question is whether or not the condition, that the legatee should be in the testator's employ at the time of his death, had been fulfilled, cross-examination of the executor designed to show that the testator was a wealthy man, was properly overruled as irrelevant and immaterial.

5. Action was brought by a household servant to recover a legacy conditioned upon such servant being in testator's employ at the time of his death. The undisputed evidence disclosed that five years after the will was made, and nearly three years prior to testator's death, he closed his house permanently and went to live at a club; that at that time he paid off such servant, who went to live elsewhere, and declared that such servant left his employ that day; that thereafter such servant did no work for him. *Held*, that a verdict for the testator's executors was properly directed, even though testator, after the closing of his house and the departure of such servant, regularly, up to the time of his death, sent her checks monthly, it appearing that in every instance, at the time, in his own handwriting, he plainly characterized such checks as "gratuities" to such former servant.

On appeal from the Essex County Circuit Court.

For the appellant, *Mulligan & Koenig* (*George D. Mulligan* on the brief).

For the respondents, *Pitney, Hardin & Skinner* (*Corwin Howell* on the brief).

The opinion of the court was delivered by

TRENCHARD, J. This action is brought under "An act concerning legacies" (3 *Comp. Stat.*, p. 3087), by Margaret Kelly, to recover a legacy bequeathed to her in and by the sixth paragraph of the will of Marcus L. Ward, deceased, reading as follows:

"Sixth—I give and bequeath to my faithful servants, Samuel Billings, Margaret Kelly and Lizzie Birne, of said city of Newark, who have been in my employ for many years, the sum of five thousand ($5,000) dollars each, provided they are living, and in my employ at the time of my death, such gifts to be paid free and discharged from the taxes referred to in the fifth clause of this will."

In the pleadings the plaintiff averred and the defendants, the executors of the estate of Mr. Ward, denied that the plaintiff was in Mr. Ward's employ at the time of his death. The trial judge directed a verdict for the defendants.

At the trial it appeared that the salient facts were these: The plaintiff, Margaret Kelly, worked as a cook for Marcus L. Ward at his home, at 49 Washington street, Newark, New Jersey, for a number of years, until September 17th, 1917. On that date Mr. Ward paid the plaintiff her wages then due, closed his house and went to live at the Essex Club, 44 Park ·Place, Newark, where he resided until his death, on May 27th, 1920. During this period the house at 49 Washington street remained closed and was not occupied by anyone during that time.

Since September, 1917, plaintiff has lived at St. Michael's Hospital.

Mr. Ward left a will dated December 23d, 1912, which after his death was duly admitted to probate and which contained the bequest above recited.

The will was found by the executors, after Mr. Ward's death, in his office safe. It was in an envelope on which was written, in Mr. Ward's handwriting, "Last Will and Testament of Marcus L. Ward, dated December 23, 1912."

The envelope (which was admitted in evidence) also had on it the inscription "September 17, 1917, Margaret Kelly and Lizzie Birne both left my employ this day. Marcus L. Ward." This inscription and signature were in Mr. Ward's handwriting.

The executors also found Mr. Ward's checks and check stubs, which were admitted in evidence. These disclosed that on October 17th, 1917, he paid the plaintiff, by check, $40, and that on the stub was written, in the testator's handwriting, "Gratuity to date. Former cook;" that on the 17th of each month thereafter, up to the time of Mr. Ward's death, there was a similar check and similar entry, the latter entries being shortened to the word "gratuity."

It was mainly upon that undisputed evidence that the trial judge directed a verdict for the defendants.

The plaintiff-appellant maintains that the envelope containing testator's will, and bearing the inscription "September 17, 1917, Margaret Kelly and Lizzie Birne both left my

employ this day. Marcus L. Ward," in the handwriting of the testator, was improperly admitted in evidence.

But we think that is not so.

Where, as here, the state of mind or intent with which any particular act is done is a relevant fact and the subject of inquiry, declarations made by the person who does the act, and accompanying the act, and which illustrate or explain its character, are a part of the *res gestœ*, and are admissible in evidence. *Frome* v. *Dennis,* 45 *N. J. L.* 515; *State* v. *Kane,* 77 *Id.* 244.

Accordingly the declaration in question was properly admitted to show with what intent and purpose he acted in paying off the plaintiff, closing his house, and moving elsewhere, that day. When he drafted his will Mr. Ward made the plaintiff a legatee if the condition stated should be fulfilled. The paper in question was evidential on the point in issue, namely, was or was not this condition fulfilled? No criticism can be made of the writing offered on the ground that the paper is not authenticated by reference in the will as an extrinsic document already existing, or on the ground that it is sought to be used as a later will, although it was not executed as a will must be. The written declaration was made five years later than the will and in no sense partakes of the nature of a will or even of a supplement to the will. It merely states an evidential fact, and was the natural thing for the testator as a business man to do in the circumstances. It is not to be regarded as direct proof of the termination of the plaintiff's employment, but as characterizing and making plain testator's state of mind and purpose at the time he closed his house. The writing accompanied the performance by the testator of an essential act in his relationship with his servant, the plaintiff.

The declaration being relevant, it is not rendered incompetent by the fact that the declarant is dead. His executors are entitled to the benefit of it, in this suit against them for the legacy, even though the declaration was in his favor.

The foregoing views are in harmony with those of text-writers and reported cases.

In *Jones Ev.* (*2d ed.*) 429, § 344, it is said: "It is not a condition of the admission of such evidence that no other can be obtained. The declarations are admitted when they appear to have been made under the immediate influence of some principal transaction, relevant to the issue, and are so connected with it as to characterize or explain it."

And in section 350: "On the grounds already stated, it is the constant practice to receive evidence of the declarations of parties accompanying their acts to show the motive or intent or state of mind with which such acts were performed."

In 3 *Wigm. Ev.* (*ed. of* 1904) 2218, § 1725, the author, after stating the general rules applying to *res gestæ*, says: "The statement must be of a present existing state of mind and must appear to have been made in a natural manner and not under circumstances of suspicion."

In several of the cases cited in Wigmore, the persons whose declarations were held to be admissible were deceased at the time of the trial. See *Com.* v. *Trefethen*, 157 *Mass.* 180, and *Mutual Life Insurance Co.* v. *Hillmon*, 145 *U. S.* 285.

This is also true of the leading case in this state (which is also cited by Mr. Wigmore), *Hunter* v. *State*, 40 *N. J. L.* 495, in this court. Here statements were made in Philadelphia (by a person afterwards murdered) to the effect that he was then going to Camden with the accused on business. The statements were held to be admissible as a part of the *res gestæ*.

The doctrine was followed in *Schlemmer* v. *State*, 51 *N. J. L.* 23, where the rule was stated thus:

"The rule exemplified by the authorities is this: That whenever the existence of a purpose or state of mind is the subject of inquiry, explanatory conduct and accompanying expressions of the party himself, or of other persons to him or in his presence, may be shown by proof."

Also in *Jennings* v. *Okin*, 88 *N. J. L.* 659, in this court, where it was sought to hold the owner of an automobile for an accident caused while it was operated by his son while on an errand for the owner, and it was claimed that the owner was not liable because at the time of the accident his son was

not engaged upon the owner's errand, it was held that statements made by the son to the occupants of the automobile were admissible to show that at the time of the accident he was on an errand different from that directed by the owner.

In *Veader* v. *Veader*, 89 *N. J. L.* 399, the question was whether certain pension checks endorsed by a decedent in his lifetime to his son, and collected by the son, were delivered to the son as gifts or for the purpose of collecting them for the account of the father. The statements of the father as to the purpose of the delivery of the pension checks were excluded only on the ground that they were not cotemporaneous with the delivery.

The appellant next contends that the trial judge erred in overruling the following question put to Mr. Pitney (one of the executors) on cross-examination: "What was the approximate net worth of Mr. Ward's estate?"

But that question was properly overruled. It was admittedly designed to show merely that the testator was a wealthy man, and hence was irrelevant and immaterial.

The last point made by the appellant is that the direction of a verdict for the defendants was erroneous.

But this contention also is without merit.

The only evidence on behalf of the plaintiff material to the question at issue, namely, whether or not she was in testator's employ at the time of his death, was that prior to September 17th, 1917, she received $30 wages in cash on the 17th of each month and was paid $30 on September 17th, 1917; that on that date testator's house, where she had been employed, was closed by him and that she did not thereafter live there, and that the house remained closed and was not occupied by anyone after that date; that she was a boarder at St. Michael's Hospital from September, 1917, and has been ever since; that on October 17th, 1917, and on the 17th of each month thereafter, until Mr. Ward's death, two and one-half years later, he paid plaintiff $40 a month by check.

When this testimony is considered in the light of that on behalf of the defendants to the effect that at the time Mr. Ward closed his house and moved to the Essex Club, he de-

clared that the plaintiff left his employ that day; that thereafter the plaintiff did no work for him; that on each of the stubs for the monthly $40 check above mentioned the testator wrote in his own handwriting, "Gratuity to date. Former cook," later condensing this to the one word "gratuity," it becomes certain that she was not in his employ at the time of his death and was not even under retainer by him. Hence the verdict for the defendants was properly directed.

The judgment below will be affirmed, with costs.

*For reversal*—None.