OPINION OF THE COURT
GARTH, Circuit Judge:
This appeal requires us to consider the effect of provisions in a lease assumed by a debtor-in-possession, Barclay Industries, Inc. (Barclay), which subsequently sought to execute a “collateral assignment” of its leasehold interest. The landlord, Teachers Insurance & Annuity Association of America (Teachers),[1] opposes the assignment on the ground that the lease prohibits it, and that neither section 364 nor section 365 of the Bankruptcy Code permits a trustee in bankruptcy (including the debtor-in-possession) to execute a prohibited assignment of this type. Barclay and its assignee, Walter Heller & Co., deny that the lease prohibits the collateral assignment, and argue that even if it is prohibited, section 364 of the Code authorizes it.
The bankruptcy court interpreted the lease to require that Teachers not unreasonably withhold consent to a collateral assignment. The bankruptcy court then held that Teachers’ opposition to the assignment constituted an unreasonable withholding of consent, and that the transaction was permitted by the Code. The district court summarily affirmed the bankruptcy court’s decision.
Our interpretation of the lease agrees with that of the bankruptcy court, but we cannot agree with the premise on which the court’s finding of fact of unreasonableness was made. We therefore vacate the order of the district court and remand for further proceedings.
I.
A.
Barclay, as lessee, executed a lease agreement on January 10, 1973 with Two Forty Associates (Two Forty) as lessor. The lease covered premises at 65 Industrial Road, Lodi, New Jersey. Teachers became the assignee of the landlord by virtue of an assignment dated as of August 21, 1973. The lease was to end on October 31, 1998; Barclay, however, retained the option to extend the lease for ten more years.
Barclay filed a voluntary petition in bankruptcy under Chapter 11 of the Code on November 6, 1981. On July 20, 1982, after a hearing at which Teachers had requested that Barclay assume or reject the lease, the bankruptcy court issued an order authorizing the assumption of the lease by Barclay as debtor-in-possession. See 11 U.S.C. § 365(a) (1982).
On January 24, 1983, Barclay made an oral application to the bankruptcy court for an order authorizing the obtaining of credit and concomitant assignment of Barclay’s interest in the lease, as collateral, to Heller. The court conducted a hearing at which Teachers objected to Barclay’s application.[2] Teachers contended that the lease prohibited the assignment to Heller. This contention was based on paragraph 19.3 of the lease, which states:
19.3 Neither this Lease nor the term hereby demised shall be mortgaged by Lessee, nor shall Lessee mortgage or pledge the interest of Lessee in and to any sublease of the Demised Premises or the rentals payable thereunder. Any such mortgage, pledge, sublease or as *78 signment made in violation of Paragraph 19.1 shall be void.
Arguing that the “collateral assignment” was in reality a mortgage of the lease, Teachers interpreted this provision to impose an absolute prohibition on the proposed transaction. They argued also that even if the transaction was a pledge, the first sentence of paragraph 19.3 prohibits it absolutely.
Barclay/Heller countered that Paragraph 19.3 only prohibits a “mortgage, pledge, sublease or assignment” that violates paragraph 19.1, which states:
19.1 Neither this Lease nor any interest of Lessee hereunder shall be sold, assigned, transferred or otherwise disposed of, whether by operation of law or otherwise, without the prior written consent of the Lessor, which consent shall not be unreasonably withheld. Any consent by Lessor to any assignment or sublease shall apply only to the specific transaction thereby authorized and shall not relieve Lessee from the requirement of obtaining the prior written consent of Lessor to any further assignment or sublease.
Under this interpretation, unless the lessor reasonably withheld consent to the collateral assignment, there would be no barrier to completion of the transaction.
The bankruptcy court accepted the argument made by Barclay and Heller. The court held that the “collateral assignment” was permissible because it found that the landlord’s denial of consent was unreasonable:
[A]cting upon the assumption that teachers [sic] will not consent, the Court finds that denial of consent is in the circumstances present here, unreasonable.
The Court finds that to permit the proposed financing to continue for a period of some four weeks presents little, if any, potential danger to the provision of teachers [sic], by reason of the collateralization of the assignment.
Heller, stepping into the shoes of the Debtor, leasee [sic] is obligated to perform in accordance with all requirements of the lease agreement. Specifically, payment of all rents and taxes when due and payable.
Heller is an entity, possessing vast assets, far exceeding those of the Debtor; it would appear that the interest of teachers [sic], the landlord is sufficiently protected.
Under such circumstances the refusal of consent appears to be without fair, valid and substantial cause or reason.
(App. 159-60) On January 25, 1983 the court ordered the authorization of the assignment, subject to approval by the district court.
On the same date, the district court summarily approved the bankruptcy court’s order.
II.
A.
Our review of a district court’s interpretation of an ambiguous contract is governed by the “clearly erroneous” standard of Fed.R.Civ.P. 52(a), because it is a question of the parties’ intent, and thus a question of fact.[3] Landtect Corp. v. State Mutual Life Assurance Co., 605 F.2d 75, 79 (3d Cir.1979). This standard applies to our review of a bankruptcy court’s findings. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir.1981). A commercial lease, under New Jersey law, is governed by contract principles. See Ringwood Assocs. v. Jack’s of Rte. 23, 398 A.2d 1315, 1320 (N.J.Super.1979). Thus we must first decide whether the relevant provisions of the lease are ambiguous, and if so, whether the bankruptcy court’s interpretation was erroneous.
*79 As we read the relevant paragraphs of the lease, there is an ambiguity. To be unambiguous a contract must be capable of only one reasonable reading. See Landtect, supra, 605 F.2d at 80. Paragraph 19.3, read by itself, could be said to impose an absolute prohibition on any assignment of any interest in the lease. Or it could be said to prohibit only reasonably unconsented-to transfers (violative of paragraph 19.1). A third possible interpretation, though a less reasonable one, is that urged by Teachers: that a mortgage or pledge is flatly prohibited, but an assignment or sublease is only conditionally prohibited. This is because the second sentence of the paragraph makes void “any such mortgage, pledge, sublease or assignment” (emphasis added) even though the first clause of the first sentence contains only the word “mortgage” (although the second clause contains the word “pledge,” it refers to a sublease). The word “such” seems to have no obvious antecedent in the preceding sentence. Thus, the extent to which paragraph 19.1 mitigates the prohibition in paragraph 19.3 is not clear, so that the paragraph as a whole is not “so clear that it can be read only one way,” Landtect, supra, 605 F.2d at 80.
The bankruptcy court found that the lease prohibited the collateral assignment only if the lessor did not unreasonably withhold its consent. We hold this finding not to be clearly erroneous because the reading is supported by evidence in the lease, viz., a reasonable interpretation of the provisions at issue.
B.
The bankruptcy court, after interpreting the lease in the manner delineated above, held that Teachers’ opposition to the collateral assignment constituted an unreasonable withholding of consent. Underlying this holding was the court’s finding that Heller as assignee would assume the obligations of the assignor (Barclay) upon execution of the agreement. This finding is expressed, as noted above, in the court’s statement that “Heller, stepping into the shoes of the Debtor, leasee [sic] is obligated to perform in accordance with all requirements of the lease agreement.” Barclay argues that the court meant by this statement only that Heller would assume the tenant’s obligations upon a default in the collateral assignment such that Heller could realize on the collateral (the lessee’s interest in the lease). However, the context of the bankruptcy court’s statement indicates that the court did not mean to say this. The court’s statement that Heller was stepping into the shoes of the debtor (Barclay) was unadorned with references to eventual default. Thus we cannot assume that the court meant to limit its finding to such a situation.
The court’s finding that Heller would immediately assume the lessee’s obligations is clearly erroneous. There is clear language in the assignment agreement that shows that Heller did not assume the obligations of a tenant. Paragraph 6 states, “Nothing contained herein shall be deemed to be an assumption by Assignee of any obligations under the Lease.” Indeed, the agreement states that Barclay, as assignor, “covenants with the Assignee to observe and perform all of the obligations imposed upon the lessee under the lease.” Furthermore, paragraph 2 states that upon default by the assignor (which includes default under the lease as well as under the assignment) the assignee may take possession of the leased premises and “have, hold, manage, lease and operate the same on such terms and for such period of time as provided in the Lease” (emphasis added). The unambiguous meaning of the agreement is that Heller (as assignee) would only assume the obligations of a lessee in the event of default by the assign- or (Barclay). Indeed, Heller’s counsel represented at the hearing that Heller’s assumption of obligations was conditional upon default (Tr. 32).[4]
*80 The bankruptcy court’s erroneous finding is not harmless error under Fed.R.Civ.P. 61, because the question of the reasonableness of a refusal to consent to an assignment is determined in large part by factors relating to the landlord’s interest in being assured that the assignment will not adversely affect the value or security of the leasehold. Thus a key factor is whether Heller is willing to guarantee payment of rent and the performance of all other tenant covenants. Other relevant factors include the financial solvency of the assignee, the nature of his business, its suitability for the premises and general business area, and the necessity of altering the premises to suit the assignee’s business. See Ringwood Assocs. v. Jack’s of Rte. 23, 153 N.J.Super. 294, 301-02, 379 A.2d 508, 512 (Law Div.1977), aff'd in relevant part, 166 N.J.Super. 36, 398 A.2d 1315 (App.Div.1979). It is clear, therefore, that the bankruptcy court’s finding that Teachers’ interest was adequately protected, and thus did not warrant Teachers’ withholding of consent, was fatally infected with its finding that Heller would immediately step into the tenant’s shoes.[5]
We need not determine the issue of whether either section 364 or 365 of the Code would permit the “collateral assignment” of a lease where such a transaction is itself prohibited by the lease.[6] Instead, it is appropriate that the case be remanded to the bankruptcy court so that that court may consider the reasonableness of the withholding of consent in light of the fact that Heller would not immediately step into the shoes of the lessee. On remand, the court should consider the factors mentioned above in light of this fact. See In re Triangle Labs., Inc., 663 F.2d 463, 471 (3d Cir.1981) (discussing appropriateness of remand).
III.
Accordingly, we will vacate the order of the district court and remand to that court so that in turn the case may be remanded to the bankruptcy court for further proceedings consistent with this opinion.

. Teachers is the assignee of Two Forty Associates (Two Forty), the original party to the lease with Barclay. Although Two Forty has participated separately in adversary proceedings with respect to Barclay's bankruptcy petition and has joined in the appeal, throughout this opinion we will refer to Teachers as the lessor under the lease.

. Although Two Forty did not appear at the hearing, counsel for Teachers stated that he had been authorized to put onto the record that Two Forty joined in Teacher’s objection to the timing of the hearing (App. 110).

. " ‘Discerning contractual intent’ is a question of fact unless the provisions of a contract are ‘wholly unambiguous.’ ’’ Landtect Corp. v. State Mutual Life Assurance Co., 605 F.2d 75, 79 (3d Cir.1979), quoting Heyman v. Commerce & Industry Insurance Co., 524 F.2d 1317, 1320 (2d Cir.1975).

. Counsel for Heller also represented as such at oral argument before this court. Transcript at 17-19.

. Chief Judge Seitz agrees with the court in its remand for a hearing on factors such as those enumerated in Ringwood Associates v. Jack’s of Rte. 23, 153 N.J.Super. 294, 301-02, 379 A.2d 508, 512 (Law Div.1977), aff'd in relevant part, 166 N.J.Super. 36, 398 A.2d 1315 (App.Div.1979). He believes this result is required regardless of the bankruptcy judge’s understanding with respect to Heller’s obligation under the assignment.

. As indicated supra, Barclay argued that 11 U.S.C. § 364 authorized the collateral assignment even if the lease prohibited that assignment. Teachers, on the other hand, argued that the applicable section was id. § 365. Section 364 provides in relevant part:
(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
(3) secured by a junior lien on property of the estate that is subject to a lien.
11 U.S.C. § 364(c) (1982).
Section 365 provides in relevant part:
(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.
(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—
(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.
Id. § 365(f).
Our disposition of this case makes it unnecessary for us to resolve this issue. Obviously, if the bankruptcy court’s findings result in a conclusion that the landlord was reasonable in withholding its consent, the bankruptcy judge will then be obliged to consider whether the assignment should be allowed under §§ 364 and 365 in spite of the terms of the contract. We express no opinion whatsoever as to the merits of these determinations, but leave that decision for the bankruptcy court in the first instance.