**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5030-16T4

SAVAGE MILLS ENTERPRISES,
LLC, a New Jersey Limited
Liability Company,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

THE WOMAN'S EXCHANGE
OF MONMOUTH COUNTY,
INC., a New Jersey Not-For-
Profit Corporation,

       Defendant-Respondent/
       Cross-Appellant.

_____

Argued December 4, 2018 – Decided December 14, 2018

Before Judges Sabatino and Haas.

On appeal from Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-000191-16.

Gregory R. Milne argued the cause for appellant/cross-respondent (Foss, San Filippo & Milne, LLC, attorneys;

Gregory R. Milne, of counsel and on the briefs; Roger J. Foss and John B. Anderson, III, on the briefs).

Steven C. Backfisch argued the cause for respondent/cross-appellant (Lindabury, McCormick, Estabrook & Cooper, PC, attorneys; Steven C. Backfisch, of counsel and on the brief; Christopher J. Reilly, on the brief).

PER CURIAM

Plaintiff Savage Mills Enterprises, LLC appeals from the Chancery Division's June 23, 2017 judgment, granting defendant The Woman's Exchange of Monmouth County, Inc.'s motion for summary judgment, and dismissing plaintiff's complaint. In that complaint, plaintiff sought a declaration that a provision of a lease between the parties was unenforceable, and an order requiring defendant to "sign an application for a partial exemption from real property taxes" on plaintiff's property. Defendant has filed a cross-appeal from the provision of the judgment that denied its request for attorneys' fees. For the reasons that follow, we affirm the court's dismissal of plaintiff's complaint, but reverse and remand for consideration of defendant's application for attorneys' fees.

The facts, as derived from the evidence submitted by the parties in support of, and in opposition to, their respective summary judgment motions, are

undisputed and fully detailed in the trial judge's oral decision. Therefore, we recite only the most salient facts here.

Defendant is a registered non-profit, New Jersey corporation. In 1956, it purchased a property in Little Silver, where it has owned and operated a non-profit gift shop ever since. Because it was a charitable organization, defendant's property was exempt from local property taxes.

In 1985, defendant agreed to sell its entire property to Talbots, Inc. (Talbots), which operated a nationwide chain of retail stores. Pursuant to the sales contract, Talbots agreed to build a new building on the property for defendant's sole use[1] and, pursuant to a separate bill of sale, Talbots granted all ownership rights in this building to defendant.[2]

Talbots also entered into a ninety-nine-year ground lease agreement with defendant, whereby it leased the land on which the new building would be erected to defendant for $1 a year, with an option to renew for another ninety-nine-year term at the same rental price. In Paragraph 6 of the lease, Talbots agreed, as the lessor, to "pay and discharge all existing and future taxes,

_____

[1] After the new building was built, defendant moved its store to it and its old shop was demolished.

[2] Talbots built a larger building on the site and used it to operate its retail store.

assessments, duties, impositions, and burdens assessed, charged, or imposed, upon [defendant's] Building and the Land."[3]

Defendant and Talbots also negotiated a provision in the lease to ensure that defendant would be able to continue to operate its store in the event Talbots later sold the property to a third party during the lease term. This provision, set forth in Paragraph 22, stated:

> The Lessor shall warrant and defend the Lessee in the enjoyment and peaceful possession of the old [store] Building until its destruction and the Land and the new [store] Building during the term of this Lease. The Lessor shall give the Lessee written notice of any sale of the Property, which said sale shall be subject to this Lease and the rights of [defendant] therein and to the new [store] Building. The Lessor must obtain the written approval of the Lessee with respect to said sale; however, said written consent shall not be unreasonably withheld by the Lessee.

In other words, Talbots and defendant agreed that the lease would survive any sale of the property to a new owner. Talbots, as the lessor, further promised to give defendant prior notice of any such sale. While the sale could not move

---

[3] As the lessor, Talbots agreed in Paragraph 14 of the lease to maintain fire and personal liability insurance for defendant's building and, under Paragraph 10, to pay for the costs of all exterior repairs. Defendant was responsible for paying all utilities, and the costs of interior maintenance and repairs under Paragraphs 9 and 11 of the agreement.

A-5030-16T4

forward without defendant's written consent, the lease specifically stated that defendant's consent could not be "unreasonably withheld."[4]

In 2000, Talbots advised defendant that it was going to sell the property to plaintiff, which planned to use Talbots' building to house and operate a furniture store. Defendant asked to review plaintiff's financial records to determine if it had the financial wherewithal to maintain the property and ensure that defendant could continue to operate its shop in accordance with the lease. In October 2000, plaintiff filed a complaint against defendant in the Chancery Division, alleging that defendant was unreasonably withholding its consent to the sale under Paragraph 22 of the lease.

Plaintiff, defendant, and Talbots promptly settled their dispute after plaintiff's owner stipulated that she had a net worth of $2.5 million, and plaintiff and Talbots agreed to make a $30,000 charitable contribution to plaintiff. The parties further agreed that these conditions, together with the other terms set forth in their settlement agreement, would not constitute precedent in connection

---

[4] Paragraph 7 of the lease permitted defendant to vacate the building and discontinue its operations. If this occurred, Talbots agreed to purchase defendant's lease and the building either at a price negotiated between the lessor and defendant, or pursuant to a procedure set forth in Paragraph 7. Under Paragraph 24, defendant could also assign or sell the lease.

with any future sale of the property by plaintiff.[5] Talbots then consummated the sale of the property to plaintiff, subject to the terms of defendant's lease.[6]

Over the next thirteen years, plaintiff operated its furniture store in its building and defendant continued to maintain its gift shop. Each party fully complied with the terms of defendant's lease.

In October 2014, however, plaintiff challenged the property tax assessment on the property set by the Borough of Little Silver (Borough). It also applied for a partial tax exemption on the grounds that a portion of the property was being used by defendant, a non-profit corporation. Prior to submitting that application, plaintiff asked defendant to fill out a form requesting the exemption. Defendant declined to do so, pointing out that it was not responsible for paying any of the property taxes on the property under

---

[5] Specifically, the February 5, 2001 agreement stated "that assuming that [plaintiff's owner's] claim to a net worth of [$2.5 million] is accurate, such net worth is a satisfactory financial condition at this time in today's dollars . . . [t]o require the reasonable consent of [defendant] under the lease to the conveyance [of the property by Talbots to plaintiff] without any separate payment or financial security." The agreement stated that the $30,000 charitable contribution was "not a precedent or a condition to future considerations of what constitutes an acceptable purchaser of the subject property under the lease."

[6] Plaintiff paid Talbots $910,000 for the property.

A-5030-16T4

Paragraph 6 of its lease and, in any event, had not been charged or assessed any taxes by the Borough for which it could legally seek an exemption.

The Borough's assessor denied the partial exemption claim because plaintiff was "not a tax exempt organization[,]" and defendant was "not legally responsible for the real estate taxes levied on the property[.]" Plaintiff appealed the assessor's decision, and its overall tax assessment to the County Board of Taxation, which affirmed the assessment and the denial of the partial tax exemption. Plaintiff then filed a complaint in the Tax Court, arguing that the assessment exceeded the property's true value and that it was entitled to a partial exemption because it was leasing a portion of the property to defendant, a non-profit charitable organization.

In a published opinion, the Tax Court denied plaintiff's request for a partial tax exemption, and held that plaintiff was clearly a for-profit entity and, as such, was not entitled to a tax exemption merely because its tenant, defendant, was a non-profit corporation. Savage Mills Enters. v. Borough of Little Silver, 29 N.J. Tax 295 (Tax 2016). In so ruling, the court found that N.J.S.A. 54:4-3.6, upon which plaintiff relied in support of its claim for a partial exemption, clearly stated that "'if any portion of a building used for' a charitable purpose 'is leased to profit-making organizations,' then the exemption is limited to 'only' the

non-leased portion." Id. at 306. Thus, "the plain language of the statute grants partial exemption where the lessor (landlord) is the tax-exempt entity and the lessee/tenant is a for-profit lessor, not the converse." Ibid.

The Tax Court also noted that the Borough had "neither imposed tax upon, nor sought to collect tax from" defendant, and that plaintiff had "assumed the entire burden of the taxes on the portion of the [property] owned and occupied by" defendant. Id. at 308-09. With particular relevance to the present appeal, the court also concluded that defendant's "lack of appeal or claim for a partial exemption does not require a conclusion that plaintiff, as fee owner of the [property], is foreclosed from filing the same." Id. at 305. Thus, because plaintiff could not comply with the requirements of the statute because it was itself a for-profit corporation, plaintiff was simply not entitled to a partial tax exemption under N.J.S.A. 54:4-3.6.[7]

After receiving the Tax Court decision, plaintiff filed a two-count complaint against defendant in the Chancery Division. In count one, plaintiff asserted that Paragraph 22 of the lease was "an unreasonable restraint on

_____

[7] The Tax Court did not address plaintiff's challenge to its overall property tax assessment in its decision and, instead, scheduled that issue for trial. Id. at 309. The record on appeal does not reveal either the status or outcome of that proceeding.

alienation" of the property and, as a result, it sought to "[e]njoin[] . . . [d]efendant from enforcing its rights under" this provision, and a declaration that Paragraph 22 was "invalid and unenforceable."[8]  In count two, plaintiff claimed that defendant breached the implied covenant of good faith and fair dealing in the lease by not completing and signing an application for a partial exemption from real property taxes, or cooperating with plaintiff's attempt to secure this partial exemption for itself.

Plaintiff and defendant soon filed cross-motions for summary judgment, with both parties seeking an award of counsel fees under Paragraph 23 of the lease.  That paragraph broadly states that "[i]n the event of any judicial proceeding in connection with the enforcement of this [l]ease, the prevailing party shall be entitled to recover reasonable attorneys' fees from the defeated party, as fixed by the [c]ourt."

Because there was no dispute as to any of the material facts, the trial judge concluded that the legal issues raised were appropriately addressed on the parties' cross-motions for summary judgment.  As correctly framed by the trial

---

[8]  Plaintiff alleged that it wanted to sell the property, but the few prospective buyers it was able to attract revoked their offers after learning of the terms of plaintiff's lease with defendant.

judge, the issue to be resolved under count one was whether the restraint on alienation contained in Paragraph 22 of the parties' lease was reasonable.[9] The legal principles governing the proper adjudication of that issue are well established.

While "New Jersey recognizes the public policy that restraints on the alienation of property are generally disfavored[,]" such restraints will be upheld when they are reasonable. Cape May Harbor Vill. & Yacht Club Ass'n, Inc. v. Sbraga, 421 N.J. Super. 56, 71-72 (App. Div. 2011). "Reasonableness is determined by weighing the utility of the restraint against the injurious consequences of enforcing the restraint." Id. at 72 (quoting Restatement (Third) of Prop.: Servitudes, § 3.4, cmt. g (Am. Law Inst. 2000)).

"Various factors bear on the reasonableness of a restraint on alienation." Id. at 71. When evaluating the specific facts surrounding the restraint, the presence of the following factors will support a finding of reasonableness:

> 1.  the one imposing the restraint has some interest in land which he is seeking to protect by the enforcement of the restraint;
>
> 2.  the restraint is limited in duration;
>
> 3.  the enforcement of the restraint accomplishes a worthwhile purpose;

---

[9] Plaintiff did not seek to terminate defendant's lease.

4.     the type of conveyances prohibited are ones not likely to be employed to any substantial degree by the one restrained.

5.     the number of persons to whom the alienation is prohibited is small;

6.     the one upon whom the restraint is imposed is a charity.

[Ibid. (quoting Restatement of Prop. §406, cmt. i (Am. Law Inst. 1944) (citation omitted); accord Restatement (Third) of Prop.: Servitudes, § 3.4, cmt. c.]

However, courts have found that

the following factors tend to support the conclusion that the restraint is unreasonable:

1.     the restraint is capricious;

2.     the restraint is imposed for spite or malice;

3.     the one imposing the restraint has no interest in land that is benefited by the enforcement of the restraint;

4.     the restraint is unlimited in duration;

5.     the number of persons to whom alienation is prohibited is large.

[Id. at 71-72 (quoting Restatement of Prop., § 406, cmt. i) (citation omitted)); accord Restatement (Third) of Prop.: Servitudes, § 3.4, cmt. c.]

When, as here, the restraint is included in a lease, and the lease requires that one of the parties consent to the alienation of the property by the other party, it is important to determine whether the restraint specifically states that consent cannot be unreasonably withheld. This is so because our courts have long recognized the validity of such provisions regardless of whether the proposed transfer must be approved by the landlord or the tenant. As we stated almost forty years ago:

> If the lease specifically provides that the landlord or the tenant will not withhold his consent to a proposed transfer by the other party unreasonably, the other party has options not available if such obligation is merely imposed by operation of law. Such specific provision in the lease is a promise and upon its breach[,] the other party will be entitled to all the remedies available for a breach of a promise . . . , including the right to terminate the lease.
>
> [Ringwood Assocs., Ltd. v. Jack's of Route 23, Inc., 166 N.J. Super. 36, 44 (App. Div. 1979) (citations omitted) (quoting Restatement (Second) of Prop., § 15.2, cmt. h (Am. Law. Inst. 1977)).]

Applying these principles to the specific facts of this case, the trial judge rendered an oral opinion and found that the restraint contained in Paragraph 22 of the lease was reasonable. The record amply demonstrates that defendant obviously had an interest in the property, the building it owned, and its continued ability to operate its store as it had for decades on the site. Thus, the restraint

12

plainly served the "worthwhile purpose" of allowing this charitable organization to continue its mission. Cape May, 421 N.J. Super. at 71.

While the restraint would run for the entire ninety-nine-year lease term, and could possibly be extended for another ninety-nine years, it could not be exercised unreasonably. Paragraph 22 specifically barred defendant from unreasonably withholding its consent to a sale of the property, thus limiting its right as a tenant to prevent any transfer. Paragraph 22 did not prevent plaintiff from attempting to convey the property to any particular class of possible buyers. It had the opportunity to sell it to anyone with defendant's consent, and defendant's consent could not be unreasonably withheld. Ibid.

At the same time, the restraint in Paragraph 22 was not capricious on its face, and it was not "imposed for spite or malice[.]" Id. at 72. As the judge noted, plaintiff did not have a buyer for the property and, when it did, Paragraph 22 would not permit defendant to unreasonably object to the proposed sale. Accordingly, the judge found that Paragraph 22 was valid.

Turning to count two of plaintiff's complaint, the judge noted that the Tax Court had already determined that plaintiff was not entitled to a partial tax exemption. Therefore, the judge found that plaintiff's argument had been rendered moot. In addition, the Tax Court held that plaintiff was not eligible for

a tax exemption because it was a for-profit company. Thus, it would not have mattered if defendant had submitted a request for a partial tax exemption; the Borough had not assessed or charged any property taxes to defendant, and plaintiff was contractually obligated to pay these taxes, as it had since it purchased the property in 2001.

The trial judge denied defendant's request for attorneys' fees under Paragraph 23 of the lease. The judge noted that this provision was "rather expansive" because it stated that the prevailing party was entitled to fees "[i]n the event of any judicial proceeding in connection with the enforcement of [the] lease[.]" However, the judge stated that this action was "not the enforcement of the lease. This was an action to determine the validity of the lease. So I will not grant counsel fees in this case." This appeal and cross-appeal followed.

We first address plaintiff's appeal. Plaintiff asserts that the judge erred by declining to invalidate Paragraph 22 of the lease as an unreasonable restraint on alienation. It also argues that defendant breached its duty of good faith and fair dealing by refusing to cooperate with plaintiff's request for a partial tax exemption on the property.[10] We disagree.

---

[10] "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420

Our review of a ruling on summary judgment is de novo, applying the same standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as the trial judge did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Prudential Prop. & Cas. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). We accord no deference to the trial judge's conclusions on issues of law and review issues of law de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

The judge properly found that the restraint on alienation set forth in Paragraph 22 was reasonable under the idiosyncratic circumstances of this case. Defendant wished to continue to operate its store in order to maintain its

_____

(1997). Under this "implied covenant . . . 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965) (quoting 5 Williston on Contracts § 670, at 159-60 (3d ed. 1961)).

charitable mission. For this reason, Talbots and defendant negotiated the lease to enable that to occur, while at the same time protecting Talbots and any subsequent lessor from any unreasonable exercise of the restraint by defendant. To exercise the restraint by refusing to consent to a transfer of the property, defendant had to act reasonably. If the lessor or a prospective buyer disagreed with defendant's action, they could secure a prompt judicial ruling on the question of whether defendant had unreasonably withheld its consent. In addition, the lessor would be able to recover its attorneys' fees if it prevailed under Paragraph 23 of the lease. As recognized by our courts for many years, leases routinely include provisions, like Paragraph 22, that require a landlord or tenant's consent to a sale of a property, provided that this consent is not unreasonably withheld. Ringwood Assocs., 166 N.J. Super. at 44. Therefore, we conclude that Paragraph 22 was a reasonable restraint on alienation under the unique facts of this case.[11]

---

[11] As previously noted, restraint on alienation cases are extremely fact sensitive. Thus, the cases relied on by plaintiff in support of its arguments on appeal are all factually distinguishable from the matter at hand. For example, the restraints involved in Brace v. Black, 51 N.J. Super. 572, 581-84 (App. Div. 1958), and Ross v. Poneman, 109 N.J. Super. 363, 365-69 (Ch. Div. 1970), were invalid because they required that a property first be offered to certain persons at a below market value, fixed price before the owner could otherwise sell it. Courts have also invalidated restraints that prevented the sale of property to anyone

We also agree with the trial judge that plaintiff's arguments concerning the partial tax exemption it sought were moot. "A case is moot if the disputed issue has been resolved, at least with respect to the parties who instituted the litigation." Caput Mortuum, L.L.C. v. S&S Crown Servs., Ltd., 366 N.J. Super. 323, 330 (App. Div. 2004). Here, by the time plaintiff filed its complaint, the Tax Court had already determined that plaintiff was not entitled to a partial tax exemption because it rented a portion of the property to defendant. Savage Mills Enters., 29 N.J. Tax at 306. As our Supreme Court has also made clear, a partial tax exemption is simply not available where all of the benefits flow "from [the non-profit] to the for-profit entities." Int'l Sch. Servs., Inc. v. W. Windsor Twp., 207 N.J. 3, 25 (2011). Thus, the partial tax exemption issue was both moot and meritless.

who was not a member of a residential community association, Mountain Springs Ass'n of N.J., Inc. v. Wilson, 81 N.J. Super. 564, 569 (Ch. Div. 1963), or a member of a beach club, Tuckerton Beach Club v. Bender, 91 N.J. Super. 167, 169 (App. Div. 1966). None of these factual scenarios were present in this case. Plaintiff's reliance on Drachenberg v. Drachenberg, 142 N.J. Eq., 127, 128 (E. & A. 1948) is also misplaced. The restraint in that case prevented the sale of a deceased family member's property if her five children did not unanimously consent. Id. at 130-31. Unlike in the present case, however, the restraint did not include a provision requiring that consent could not be unreasonably withheld. Id. at 128.

A-5030-16T4

Moreover, defendant was not responsible for paying any of the property taxes on the property, including on the land where its building was located. The Borough had never even assessed any taxes to defendant. Thus, defendant could not request an exemption, or join in requesting an exemption, from a tax that it was under absolutely no obligation to pay. Therefore, defendant did not breach the implied covenant of good faith and fair dealing under the terms of the lease.

Finally, we address defendant's cross-appeal. Defendant contends that the judge erred by denying its request for attorneys' fees under Paragraph 23 of the lease. We agree.

"New Jersey strictly adheres to the 'American rule' in regards to attorney's fees[,]" under which each party bears its own legal fees and costs. First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 425 (App. Div. 2007) (citing Van Horn v. City of Trenton, 80 N.J. 528, 538 (1979)). "Consistent with this policy, attorney's fees are not recoverable absent express authorization by statute, court rule or contract." Ibid. (citing Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 505 (1983)). Attorney "fee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427,

444 (2001) (internal quotation mark omitted) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

In this case, the parties provided for the award of counsel fees in Paragraph 23 of their lease contract. This provision stated that "[i]n the event of any judicial proceeding in connection with the enforcement of this [l]ease, the prevailing party shall be entitled to recover reasonable attorneys' fees from the defeated party, as fixed by the [c]ourt." (emphasis added). For the following reasons, we conclude that the judge mistakenly exercised her discretion by determining that "[t]his was an action to determine the validity of the lease[,]" rather than a "judicial proceeding in connection with the enforcement of [the] [l]ease[.]"

In so ruling, we acknowledge that when the parties provide for the award of attorneys' fees in a contract, "courts will strictly construe that provision in light of the general public policy disfavoring the award of attorneys' fees." N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 570 (1999). However, Paragraph 23 plainly and unambiguously states that fees should be granted to the prevailing party "[i]n the event of any judicial proceeding in connection with the enforcement of this [l]ease[.]" Just as clearly, this was

obviously an action brought "in connection with the enforcement of" Paragraph 23 of the lease.[12]

In this regard, plaintiff specifically sought in count one of its complaint to "enjoin[] . . . [d]efendant from enforcing its rights under [Paragraph] 22 of the [l]ease[,]" and a declaration that Paragraph 22 was "invalid and unenforceable[.]" (emphasis added). Similarly, in count two, plaintiff alleged that defendant breached the implied covenant of good faith and fair dealing by not cooperating with its attempt to obtain a partial tax exemption on the property. As relief for this breach, plaintiff clearly sought to enforce this implied covenant in the lease by requiring defendant to sign the exemption application and work with plaintiff to secure the exemption.

Thus, it cannot be disputed that under the broad language of Paragraph 23, this was a "judicial proceeding in connection with the enforcement of" the lease. It is equally undisputed that defendant fully prevailed on all of the issues involved in this enforcement action. Therefore, the judge should have considered defendant's request for attorneys' fees. Because this did not occur,

---

[12] We note in passing that the reciprocal nature of the fee-shifting provision can operate as a disincentive for defendant to take an unreasonable position in withholding consent to a sale to a new owner.

we are constrained to reverse this portion of the court's order and remand for further proceedings concerning defendant's request for fees.[13]

In sum, we affirm the trial court's order granting summary judgment to defendant and dismissing plaintiff's complaint with prejudice. We reverse the portion of the order denying defendant's request for reasonable attorneys' fees and remand for further proceedings on that issue. On remand, the trial court shall have jurisdiction to consider any application by defendant for appellate fees. See R. 2:11-4.

Affirmed in part; reversed in part; and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[13] In its reply brief, plaintiff claims for the first time that defendant should have been barred from receiving attorneys' fees as the prevailing party because it did not file a counterclaim seeking these fees. Because plaintiff did not raise this argument before the trial court, we decline to consider it. Nieder v. Royal Indemn. Ins. Co., 62 N.J. 229, 234 (1973).

A-5030-16T4