172 N.J. Super. 570 (1980)
412 A.2d 1331
LINDA C. DREW, PLAINTIFF-RESPONDENT,
v.
ROSALIE PULLEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 4, 1980.
Decided March 20, 1980.
*572 Before Judges LORA, ANTELL and PRESSLER.
Legal Aid Society of Mercer County, attorneys for the appellant (Cindy K. Miller, of counsel and on the brief).
Respondent filed no brief.
The opinion of the court was delivered by PRESSLER, J.A.D.
This appeal implicates important questions as to the scope of a tenant's remedies where there has been a breach by the landlord of the implied covenant of habitability.
Plaintiff is the owner of a one-family house in Trenton which she leased to defendant in March 1978 at a monthly rental of $105, exclusive of heat and utilities. The house was then in an apparently somewhat dilapidated condition, which accounted for the relatively low rent. The condition of the premises, however, continued to deteriorate, and despite defendant's frequent demands that plaintiff make necessary repairs, such repairs were either inadequately undertaken or not undertaken at all. Finally, defendant, claiming breach of the covenant of habitability, withheld the rent due for November and December 1978. Plaintiff commenced a summary dispossess action for nonpayment of rent and, because of the interposition of the uninhabitability defense, the trial judge directed defendant to pay the full rent due into court and scheduled a hearing on the defense. Defendant complied and has since then been so depositing the monthly rent.
The habitability hearing was conducted in mid-January 1979. Based on the testimony of both defendant and a City of Trenton Housing Inspector who had inspected the premises the week before and had noted 27 code violations, the trial judge concluded that there had in fact been a breach of the implied covenant. The most serious defects included hazardously defective wiring, a kitchen and living room ceiling in imminent danger of falling down, and open holes in the floors of most of the rooms existing by virtue of uncovered heating vents. The trial judge directed *573 plaintiff to arrange for the necessary repairs, assuring her that the fund created by the deposit into court of the monthly rentals would be available to her for that purpose. He further directed defendant to continue making the monthly deposits. No abatement in rent was then allowed and the matter was continued until March 1, 1979, in order to permit the repairs to be made. Because of plaintiff's failure to appear at that hearing, the matter was again continued until June. Plaintiff again failed to appear. In the interim, the rent money had continued to accumulate in the court deposit and nothing had been done to remedy the defective conditions.
In view of plaintiff's nonappearance and her evident lack of interest in the preservation of the premises, if not her outright abandonment thereof, defendant urged the trial judge at the June hearing to proceed without plaintiff and at least to accord her a rent abatement. The judge refused to do so since he was of the view that entry of an abatement order would not be appropriate until the necessary repairs were made and, further, if the landlord would not make them, then it was the responsibility of the tenant to arrange for them with court-monitored resort to the accumulating fund on deposit. His explanation for this course of action was that
* * * the foremost thought in my mind is that I want to have her in a decent place to live, and that comes before the question of abatement or anything else that the repairs are taken care of and that  but she has to take a little action on her own part, here, and move things off essentially, and all it is is a couple of phone calls to repairmen to come out and give her estimates so that we can go ahead and authorize them to do the repair.
Thus, the result of the June hearing was to maintain the entirely unsatisfactory status quo of unremedied defective premises coupled with the tenant's monthly payment, albeit into court, of the full rent despite the already adjudicated breach of the covenant of habitability.
Defendant contends that the trial judge erred in failing to resolve the impasse, in refusing to grant her an abatement and *574 in imposing upon her the obligation to take the initiative in respect of repairs.[1] We agree. We appreciate the judge's legitimate concern that the substandard conditions in which defendant and her family were living should not be permitted to persist. But we are also persuaded that the remedial approach he took, limited to an attempt to force the tenant to undertake the landlord's responsibilities, was not only ultimately unproductive of that end but also constituted a denial of defendant's legitimate rights and an overly constrictive perception of his adjudicative role and the remedial resources available to him.
The landmark decision in Berzito v. Gambino, 63 N.J. 460 (1973), made clear that where there is a breach of the landlord's covenant of habitability, there construed as mutually dependent upon the tenant's covenant to pay rent, the tenant has various remedial options open to him. He may regard the breach as a constructive eviction and quit the premises without further liability to the landlord for rent. He may give notice to the landlord of the defect and if the landlord fails to remedy the condition, the tenant himself may do so, deducting the reasonable cost of repair from his rent. Or he may seek from the court an abatement of rent calculated on the basis of the difference, if any, between the rent reserved and the market value of the premises in their defective condition. Defendant here proved the breach of the covenant. She did not choose to quit. Nor did she choose to make the repairs, an obviously unrealistic option in view of her own evidently limited resources and the extensive structural work required to cure the breach. What she, therefore, *575 elected was to seek a rent abatement. She was entitled to seek this remedy and it should have been adjudicated.
The trial judge was not incorrect in insisting that the repairs be made. His error lay in insisting that the repairs be made as a condition to rent abatement and in insisting that the tenant bear responsibility for initiating them. Appropriate and adequate techniques for accomplishing the making of repairs are provided for by N.J.S.A. 2A:42 85 to 97, inclusive, adopted in 1971 and the subject of little reported judicial comment since. That enactment proceeds from the express legislative finding that the health, safety and general welfare of the people of the State require judicial mechanisms for the encouragement of owners of substandard dwelling units to rehabilitate them and for such rehabilitation to be otherwise effected where the owners fail to do so. N.J.S.A. 2A:42 85.[2] The scheme accordingly provides, among other remedies, that where either a public officer or tenant proves uninhabitability and the owner is either unwilling or unable to make the necessary repairs, the court may enter an order requiring the tenant to deposit his rent with the clerk of the court and may, further, appoint an administrator, who may but need not be a public official, to effectuate the necessary work with the use of the deposited rents. N.J.S.A. 2A:42-92, 93. Since the act excepts only owner-occupied two-family dwellings, its provisions were here available. As soon as it became clear to the trial judge that plaintiff was not voluntarily proceeding with rehabilitative work, the judge could have proceeded pursuant to the Act, plaintiff duly noticed of his intention to do so, a hearing held and an administrator appointed.[3] There was no need to place on either himself or the tenant *576 the direct responsibility or onus to secure and evaluate repair estimates or to engage and deal with contractors.
With respect to the relationship between the so-called common-law remedies articulated in Berzito v. Gambino and the procedures available pursuant to N.J.S.A. 2A:42 85 et seq., it is clear that they are not mutually exclusive and hence that the full gamut of appropriate remedies is simultaneously available to a tenant. Berzito deals with a controversy arising prior to the effective date of this legislation but was decided thereafter. The court, although noting therefore the inapplicability of the legislation to the cause before it, nevertheless carefully pointed out that the act would "in the future afford a further remedy, in addition to those we have mentioned above, to tenants of substandard dwellings." 63 N.J. at 473. See also, Newark Housing Auth. v. Scott, 137 N.J. Super. 110, 115 (App.Div. 1975), also noting that "there is nothing in the act to indicate that its provisions were exclusive of other court-fashioned remedies."
In our view, therefore, the appropriate relief here should have been an immediate adjudication of the tenant's right to a rent abatement coupled with the court's consideration of the potential efficacy of invoking the remedial mechanisms of N.J.S.A. 2A:42-85, et seq. In that manner all the legitimate interests here involved would have been protected. The tenant, by allowance to her of an abatement, would have been compensated for the breach of the covenant and would not have been in the effective position for all these months of having to pay the full bargained-for rent while the breach continued. From her point of view, obviously, it makes little immediate difference whether the full rent is paid to the landlord or to the court. In either case, the premises are uninhabitable and she is advancing the *577 same monthly sum she would have to advance if it were habitable. By the same token, deposit in court of the actual rent due, that is, the reserved rent less the amount of the abatement, would result in creation of a fund available either to the landlord or the court-appointed administrator for the purpose of repairs.
We are not unmindful either of the serious calendar problems facing the county district courts or of the apparent intractability of many of the difficult landlord-tenant controversies confronting them. We are confident, however, that these are problems which can be effectively addressed by creative use of the judicial power in employing available common-law and statutory remedial techniques.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] Defendant also claims that the court erred in refusing to sanction plaintiff for her non-appearance pursuant to R. 1:2 4. Since for the reasons herein stated we are satisfied that the court could have afforded complete remedial relief despite plaintiff's non-appearance, we perceive no mistaken exercise of its discretion in refusing to so sanction her.
[2] The need for such legislation was rendered especially acute by the 1967 enactment of N.J.S.A. 52:31B-5 which, except in the case of imminent hazard, prohibits eviction resulting from municipal code enforcement unless there is available relocation housing.
[3] Procedurally, the act contemplates its invocation by tenant or public official petition. N.J.S.A. 2A:42-89, 90. We are, however, satisfied that where the question of habitability is raised defensively and the procedures of the act appear to be appropriate, the court may, in the dispossess proceeding, direct the defendant-tenant to file an appropriate pleading and can, pendente lite, direct payment of rent into court.