**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5148-16T3

126 SOUTH STREET OWNER,
LLC,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

SUZI'S SKIN AND NAIL CARE
STUDIO, INC., d/b/a SUZI'S SALON
AND SPA,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Argued October 18, 2018 – Decided January 18, 2019

      Before Judges Simonelli and DeAlmeida.

      On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. LT-000455-17.

      James T. Bryce argued the cause for appellant/cross-respondent (Murphy McKeon, PC, attorneys; James T. Bryce, on the briefs).

Daniel L. Schmutter argued the cause for respondent/cross-appellant (Hartman & Winnicki, PC, and Law Offices of Thomas A. Buonocore, PC, attorneys; Daniel L. Schmutter and Rosemary G. Vinitsky, on the briefs).

PER CURIAM

In this summary dispossess matter, defendant Suzi's Skin and Nail Care Studio, Inc., d/b/a Suzi's Salon and Spa, appeals from the July 28, 2017 Law Division order holding that defendant was not entitled to assert a Marini[1] defense, ordering it to pay $63,239.98 in back rent, and awarding $39,204 to plaintiff 126 South Street Owner, LLC for counsel fees and costs. Plaintiff cross-appeals from that part of the order holding that N.J.S.A. 2A:18-53(c)(4) did not apply to grant plaintiff a judgment for possession. Both parties also challenge the amount of the counsel fee award. We affirm in part, reverse in part, and remand for entry of a judgment for possession.

I.

Pereaux Deux, LLC (Pereaux) was the prior owner of commercial property located at 126 South Street in Morristown. In November 2011, defendant began negotiating with Pereaux to lease a portion of the property.

---

[1] Marini v. Ireland, 56 N.J. 130 (1970).

Defendant prepared a rental agreement that proposed a five-year lease with a five-year option to renew (defendant's proposed rental agreement). Defendant's proposed rental agreement also proposed the following rent during the initial and renewal terms:

Rent Breakdown: Years 1-5

| Year | Months | Rent | Total |
|---|---|---|---|
| Year 1: | Months 1-4 | $2,500 | |
| | Months 5-6 | $6,000 | |
| | Months 7-12 | $7,500 | |
| | Total Year 1 | | $67,000 |
| Year 2: | Months 1-12 | $8,000 | |
| | Total Year 2 | | $96,000 |
| Year 3: | Months 1-12 | $8,800 | |
| | Total Year 3 | | $105,600 |
| Year 4: | Months 1-12 | $9,700 | |
| | Total Year 4 | | $116,400 |
| Year 5: | Months 1-12 | $10,700 | |
| | Total Year 5 | | $128,400 |
| | Total Rent for Initial 5 Yr. Term | | $513,400 |

Rent Breakdown: Years 6-10

| Year | Months | Rent | Total |
|---|---|---|---|
| Year 6: | Months 1-12 | $11,000 | |
| | Total Year 6 | | $132,000 |
| Year 7: | Months 1-12 | $11,500 | |
| | Total Year 7 | | $138,000 |
| Year 8: | Months 1-12 | $12,000 | |
| | Total Year 8 | | $144,000 |
| Year 9: | Months 1-12 | $12,500 | |
| | Total Year 9 | | $150,000 |
| Year 10: | Months 1-12 | $13,000 | |
| | Total Year 10 | | $156,000 |
| | Total Rent for Optional 5 Yr. Term | | $720,000 |

3

Defendant's proposed rental agreement also had an option to purchase, which provided, in pertinent part: "Tenant will have the sole option to purchase the entire property for the sum of $1,600,000, beginning at the signing of this agreement, until the last day of the [second] year of the actual lease term."

On November 12, 2011, defendant and Pereaux executed a Letter of Understanding (LOU), agreeing to a five-year lease with a five-year option to renew and rent as follows:

| Year 1 | Months 1-4 | $2,500 |
|--------|-----------|--------|
|        | Months 5-6 | $6,000 |
|        | Months 7-12 | $7,500 |
| Year 2 | Months 1-12 | $8,000 |
| Year 3 | Months 1-12 | $8,800 |
| Year 4 | Months 1-12 | $9,700 |
| Year 5 | Months 1-12 | $10,700 |
| Year 6 | Months 1-12 | $11,700 |

Years 7-10 at a base of $11,700 plus the increase in [Consumer Price Index] for the N.Y./N.J. Area for the previous year or the amount of increase in the property's real estate taxes for the prior year, whichever is greater.

The LOU also contained an option to purchase, which provided, in pertinent part: "Lessee will have the sole option to purchase the entire property for the sum of $1,600,000, for a period beginning at the signing of the formal lease and ending on the last day of the [second] year of the actual lease term."

Pereaux's attorney prepared the final lease, which the parties executed on December 16, 2011. Paragraph One of the lease provided as follows, in pertinent part:

> Payment of Rent. The Tenant covenants and agrees to pay to the Landlord, as rent for and during the term hereof, as set forth in Schedule A which is attached hereto and made a part hereof.
>
> Rent is due on the first day of each month in advance.[2]
>
> [(Emphasis added).]

Schedule A, entitled "Rental Payments," provided as follows:

| Date Due | Annual | Monthly Base Rent |
|---|---|---|
| Months 1-4 | | $2,250.00 |
| Months 5-6 | | $6,000.00 |
| Months 7-12 | | $7,500.00 |
| Second Year | $96,000.00 | $8,000.00 |
| Third Year | $105,600.00 | $8,800.00 |
| Fourth Year | $116,400.00 | $9,700.00 |
| Fifth Year | $128,400.00 | $10,700.00 |

Paragraph 43A of the lease provided as follows, in pertinent part:

> Option to Renew. Landlord and Tenant agree that if the Tenant is not in default under the terms and conditions of this lease and Tenant is still in occupancy of the demised premises, Tenant shall have the right and

---

[2] Because the tenancy commenced in the middle of the month, Pereaux agreed that defendant could pay rent on the fifteenth day of the month.

A-5148-16T3

option to extend the term of this lease for an additional period of five (5) years.

. . . .

The renewal term shall be on the same terms and conditions applicable to the initial term hereof except that the basic rent payable shall be adjusted as follows:

A. The base <u>annual</u> rental for the first year of the renewal period shall be $11,700.00. Each subsequent year of the renewal period shall have an <u>annual</u> rental of $11,700.00 plus $11,700.00 multiplied by the increase in the Consumer Price Index . . . between the sixtieth (60th) month of the Lease agreement and the date of commencement of each subsequent year of the renewal term. <u>In no event shall the basic rental of each year of the said renewal period be less than $11,700.00 or the prior years' rent, whichever is greater</u>.

[(Emphasis added).]

Paragraph 47 of the lease provided:

<u>Option to Purchase</u>: Provided and subject to the express condition that as of the date of the exercise of such option the Tenant shall have fully performed and complied with all obligations which are imposed upon it under the provisions of this Lease Agreement and shall not be in default with respect thereto, the Tenant shall have the sole right and option during the first two years of the lease term to purchase the property for $1,600,000. In the event Tenant does not notify Landlord in writing of its intent to purchase the property within . . . the time provided, Tenant's option to purchase shall terminate. Time is of the essence.

The lease granted Pereaux the right to re-enter and take possession of the premises if defendant defaulted in the performance of any lease term or condition.

Defendant did not exercise its option to purchase the property. In June 2015, Pereaux notified defendant that it intended to sell the property to plaintiff. Pereaux sent defendant a tenant estoppel certificate, which stated that defendant had the option to renew the lease for an additional five years at rent of $11,700 per month for the first year of the renewal term. Defendant refused to execute the document, asserting the rent amount during the renewal period was $11,700 per year, as stated in Paragraph 43A of the lease, and the premises required repairs.

Following negotiations, in October 2015, Pereaux sent defendant an amended tenant estoppel certificate, which included post-closing repairs plaintiff would make to the premises. Pereaux also sent defendant an addendum to the lease agreement, which provided as follows, in pertinent part:

> 1. [Paragraph 43A] of the Lease . . . is hereby deleted and replaced with the following: "A. The base annual rental for the first year of the renewal period shall be $140,400.00, payable in monthly installments of $11,700.00. The base annual rental shall be increased by [one percent] for each subsequent year of the renewal period."

A-5148-16T3

Defendant refused to execute the amended tenant estoppel certificate or the addendum to the lease.

Plaintiff acquired title to the property on January 29, 2016, and an assignment of the lease. In May 2016, defendant exercised its option to renew the lease for five years, from January 1, 2017 to December 31, 2022. In December 2016, defendant remitted a monthly rent payment in the amount of $975 for January 2017, the first month of the renewal term. Defendant made this rent payment in accordance with Paragraph 43A of the lease, not because of any defective conditions on the property or need for repairs. Plaintiff returned the rent payment to defendant and served a notice of default and demand for full payment of rent plus late charges. Defendant did not cure the default.

In January 2017, defendant remitted a rent payment of $975 for February 2017. Plaintiff returned the rent payment and sent defendant a notice of default and demand for payment. Plaintiff's attorney advised defendant that Paragraph 43A of the lease

> incorrectly provides that the base annual rental for the first year of the renewal period would be $11,700 when it was obviously intended that the monthly base rent would be $11,700 with an annual base rent of $140,400 during the first renewal year. Clearly, the reference that the annual base rent would be $11,700 is a typographical error and that figure was intended to reference the monthly base rent amount. Under no

circumstances would a reasonable interpretation of the lease language indicate that the <u>annual</u> renewal rent would be less than the monthly rent paid by the Tenant in the preceding month during the original term of the lease (i.e., $11,700 total annual rent and $10,700 monthly rent).

Defendant did not cure the default. In February 2017, the same situation occurred regarding the March 2017 rent payment.

On February 15, 2017, plaintiff served a notice of termination on defendant terminating the lease as of February 21, 2017, demanding possession of the property, and notifying defendant the lease was terminated because defendant "breached and violated the covenants and agreements of the Lease Agreement by failing to pay rent when due in violation of N.J.S.A. 2A:18-53(c)(4)" (the NOT). Defendant did not cure the default or surrender possession of the premises. As a result, plaintiff filed a complaint for possession in the Special Civil Part. Plaintiff alleged breach of the lease as the cause of action for summary dispossession and attached the NOT, which indicated plaintiff was proceeding under N.J.S.A. 2A:18-53(c)(4). Plaintiff alleged that defendant had not surrendered possession of the premises and held over and continued in possession without plaintiff's consent. Plaintiff also filed a complaint in the Law Division for unpaid rent and other relief.

Defendant filed a motion in the Special Civil Part to transfer the summary dispossess action to the Law Division and consolidate it with the Law Division action. Defendant argued the matter must be transferred because this was a complex commercial tenancy that demanded discovery and required uniformity with the Law Division action and joinder of claims.

In a March 23, 2017 oral opinion, the trial court denied the motion. The court first determined it had jurisdiction because the matter involved an interpretation of the lease, and plaintiff was not seeking reformation of the lease. The court found the issue was the rent amount and whether the parties intended to reduce the rent by ninety-one percent. The court considered the factors warranting transfer in Twp. of Bloomfield v. Rosanna's Figure Salon, Inc., 253 N.J. Super. 551, 563 (App. Div. 1992), and concluded the issue was not overly complex as to require discovery and defendant's assertion of a Marini defense did not require a transfer. The court noted that landlords frequently file separate Law Division actions for unpaid rent simultaneously with summary dispossess actions, and found the pending Law Division action did not require a transfer. The court also found that the significant delay the transfer would cause "would outweigh any prejudicial effects." The court concluded none of the factors for

transfer had been met and the matter was "a simple case" that could be resolved in the summary dispossess action.

The court memorialized its decision in a March 23, 2017 order. Defendant then filed an answer in the Law Division matter and a counterclaim for declaratory judgment, damages, and other relief.

Following trial in the summary dispossess matter, the court entered an interim order on May 30, 2017, holding that defendant owed $63,239.98 in back rent as of May 2017, and ordering defendant to deposit that sum into court. The court interpreted the language in Paragraph 43A of the lease to require rent of $10,700 per month during the renewal period, as plaintiff had claimed. The court also ordered the parties to submit briefs addressing plaintiff's request for counsel fees, defendant's request to assert a Marini defense, and whether N.J.S.A. 2A:18-53(c)(4) applied to grant plaintiff a judgment for possession.

Subsequently, in a June 29, 2017 statement of reasons, the court found, based on the testimony of defendant's representative, Bennett Fleisher,[3] that defendant was not entitled to assert a Marini defense because "[d]efendant

---

[3] Fleisher is the husband of Susan Mack, the sole shareholder of defendant and guarantor of the lease. Fleisher was responsible for defendant's business operations and was the primary person involved in the lease negotiations and dealings with Pereaux and Pereaux's attorneys.

unambiguously claim[ed] that $975 [was] full rent and [d]efendant ha[d] not withheld rent on the basis of any Marini claim." The court also stated that under Berzito v. Gambino, 63 N.J. 460, 469 (1973), defendant was not without recourse and could recover any claimed overpayment of rent via its counterclaim in the Law Division matter.

The court also held that because plaintiff proceeded under a nonpayment of rent theory, plaintiff was not entitled to a judgment for possession under N.J.S.A. 2A:18-53(c)(4). The court reasoned that N.J.S.A. 2A:18-53(b) provides for a cause of action for nonpayment of rent and N.J.S.A. 2A:18-55 permits the tenant to cure. The court ordered the $63,239.98 defendant deposited into court be paid to plaintiff, reserved on the counsel fee issue, and ordered plaintiff's counsel to submit an updated affidavit of services complying with Rule 4:42-9 and R.P.C. 1.5(a).

The court memorialized its decision in a July 28, 2017 order and also awarded plaintiff $39,204 for counsel fees and costs. In its statement of reasons, the court determined the reasonableness of the rates charged and time spent by plaintiff's counsel and omitted redundant and excessive services. This appeal followed.

12

## II.

On appeal, defendant contends the court erred in not enforcing the clear and unambiguous terms of Paragraph 43A, which provided that rent was $11,700 per year during the renewal period. Defendant argues the court impermissibly found an ambiguity in Paragraph 43A and used extrinsic evidence to determine the parties' intent in violation of the parol evidence rule. Defendant also argues that reformation was the correct remedy and was outside the court's jurisdiction.

We review the facts that relate to defendant's arguments. Without objection, Pereaux's representative, Rob Oberdick, testified on direct examination about defendant's proposed rental agreement and the LOU, and defendant's attorney cross-examined Oberdick on these documents. In addition to this evidence, plaintiff's witnesses testified, without objection, that the use of the words "annual" and "year" in Paragraph 43A of the lease were a mistake, the parties never intended to reduce and never discussed a reduction of the rent during the renewal period, and defendant never requested a rent reduction.

It was not until plaintiff sought to introduce the LOU and defendant's proposed rental agreement into evidence that defendant objected, arguing the lease was an integrated agreement and the parol evidence rule does not permit admission of extrinsic evidence to interpret an integrated agreement. The court

overruled the objection, finding admission of the documents did not violate the parol evidence rule because the documents were relevant and admissible to determine the intent of the parties regarding rent during the renewal period. The court concluded: "And . . . clearly there's inconsistent statements in Paragraph 43[A]. That's why we're here . . . and I think it's permitted, relevant . . . evidence, as to the parties' intent. . . ."

The court issued an oral opinion at the conclusion of the trial on May 30, 2017. Addressing credibility, the court noted that Fleisher admitted he did not request a rent reduction during the renewal period and there were no discussions about a rent reduction. The court found Fleisher's testimony that he intended the rent be $975 per month during the renewal period "extremely incredible." The court also found that Fleisher "lacked candor and credibility," his "testimony was contradicted by documents and did not seem reasonable and logical[,]" his responses to certain questions were "argumentative[,]" "incomplete[,]" and "arrogant[,]" and his testimony was "disingenuous."

The court noted that when confronted by defendant's proposed rental agreement, Fleisher admitted he drafted it, but had no credible response as to how he could interpret the document to mean rent would be $975 per month during the renewal period. The court also noted the LOU and defendant's

14

proposed rental agreement contradicted Fleisher's testimony that the rent was reduced because the option to purchase the property was reduced from five years to two years, as these documents gave defendant a two-year option to purchase and nevertheless provided for monthly rental amounts of $11,700 and $11,000, respectively. The court emphasized that Fleisher's "testimony that the two-year option [to purchase] was negotiated down in exchange for this incredible [ninety-one] percent reduction of rent is, to put it kindly, disingenuous at best, and is directly contradicted by the documents submitted into evidence."

The court found Fleisher admitted that Paragraph 43A was very close to the LOU as to year six, but Fleisher essentially did nothing to correct the mistake in Paragraph 43A because it benefitted defendant. The court concluded that "what in essence [Fleisher] said was he was aware of [the mistake in Paragraph 43A] but it was more advantageous to [defendant] so he kept his mouth . . . shut."

The court also found that plaintiff did not seek reformation of Paragraph 43A to provide for rent of $11,700 per month, but rather, sought an interpretation that the rent was $10,700 in year six. We reiterate that Paragraph 43A provides:

> The base annual rental for the first year of the renewal period shall be $11,700.00. Each subsequent year of the renewal period shall have an annual rental of $11,700.00 plus $11,700.00 multiplied by the increase

in the Consumer Price Index . . . between the sixtieth (60th) month of the Lease agreement and the date of commencement of each subsequent year of the renewal term. In no event shall the basic rental of each year of the said renewal period be less than $11,700.00 or the prior years' rent, whichever is greater.

The court found "the evidence [was] overwhelming that there was no intent by the parties to reduce the rent whatsoever commencing in year six, and that a fair, reasonable and sensible interpretation of Paragraph 43[A] . . . is that the rent should be . . . $10,700 per month in year six[.]" The court determined its decision was "consistent with the language of [the third sentence in] Paragraph 43[A], which limits and modifies [the language in the first and second sentences], so that the rent will not be reduced in any year of the lease and any year of the renewal." The court explained:

> And I understand that there's conflicting language, and there's ambiguous language in [Paragraph 43A] and certain interpretations could be made, but that's based on the evidence . . . and based on my interpretation of [Paragraph 43A] and the case law cited, I think clearly the evidence supports an interpretation that the rent was not to be decreased from the previous year's rent.
>
> This is, again, consistent with the parties' negotiation of the [lease], in [t]he [c]ourt's judgment, and consistent with the case law cited, and with the interpretation in accordance with justice and common sense.

A-5148-16T3

The interpretation of a contract is subject to our de novo review. Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). "Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Id. at 223. Although we owe the court here no special deference, we agree with the court's conclusions and credibility determinations.

"Under New Jersey law a lease is like any other written contract." Ringwood Assocs., Ltd. v. Jack's of Route 23, Inc., 153 N.J. Super. 294, 309 (Law Div. 1977), aff'd, 166 N.J. Super. 36 (App. Div. 1979). Courts should read contracts "as a whole in a fair and common sense manner," and enforce them "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009); Caruso v. Ravenswood Developers, Inc., 337 N.J. Super. 499, 506 (App. Div. 2001)).

The language of the contract, by itself, must determine the agreement's force and effect if it is plain and capable of legal construction. Ibid. (quoting Twp. of White v. Castle Ridge Dev. Corp., 419 N.J. Super. 68, 74-75 (App. Div. 2011)). However, "[e]ven in the interpretation of an unambiguous contract, [the court] may consider 'all of the relevant evidence that will assist in determining

[its] intent and meaning.'" Ibid. (third alteration in original) (quoting Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 269 (2006)); see also Driscoll Constr. Co. v. State, Dep't of Transp., 371 N.J. Super. 304, 316 (App. Div. 2004) (noting that even when an integrated contract is free from ambiguity, "evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in aid of interpretation") (quoting Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 501 (App. Div. 2000)).

The construction of a written contract is usually a legal question for the court, suitable for disposition on summary judgment unless there is ambiguity or the need for parol evidence to aid in interpretation. Driscoll Constr. Co., 371 N.J. Super. at 313-14. The court's goal is to ascertain the intentions of the parties "as revealed by the language used, taken as an entirety", the relations of the parties, "the attendant circumstances, and the objects [the parties] were thereby striving to attain." Id. at 313 (quoting Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 184 (1981)). In light of this goal our Supreme Court has adopted an expansive view of the parol evidence rule that permits consideration of "all of the relevant evidence that will assist in determining the intent and meaning of the contract." Conway, 187 N.J. at 268. Thus, when the terminology used in a contract is not free from doubt as to its meaning, a party should be given an

opportunity to present evidence of extrinsic circumstances that bear on the proper interpretation of the document's language. Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 192 (App. Div. 2002).

"In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document." Conway, 187 N.J. at 268. However, as we have made clear:

> the parol evidence rule applies only to prevent the substantive alteration of contractual terms agreed upon by parties and expressed in an integration of their bargain, by resort to other prior or contemporaneous agreements or understandings. But the parol evidence rule does not even come into play until it is first determined what the true agreement of the parties is − i.e., what they meant by what they wrote down. Only when that is determined is one in an appropriate position to raise the bar of the parol evidence rule to prevent alteration or impugnment of the agreement by the asserted contradictory prior or contemporaneous agreement. In other words, interpretation and construction must necessarily precede protection against forbidden contradiction or modification. And in the process of interpretation and construction of the integrated agreement all relevant evidence pointing to meaning is admissible because experience teaches that language is so poor an instrument for communication or expression of intent that ordinarily all surrounding circumstances and conditions must be examined before there is any trustworthy assurance of derivation of contractual intent, even by reasonable judges of ordinary intelligence, from any given set of words which the parties have committed to paper as their contract. Construing a contract of debatable meaning

by resort to surrounding and antecedent circumstances and negotiations for light as to the meaning of the words used is never a violation of the parol evidence rule. And debatability of meaning is not always discernible at the first reading of a contract by a new mind. More often it becomes manifest upon exposure of the specific disputed interpretations in the light of the attendant circumstances.

[Garden State Plaza Corp. v. S.S. Kresge Co., 78 N.J. Super. 485, 496 (App. Div. 1963).]

Although there is no ambiguity in the first and second sentences of Paragraph 43A, the court found an ambiguity in the last sentence, which provides that "[i]n no event shall the basic rental of each year of the said renewal period be less than $11,700.00 or the prior years' rent, whichever is greater." At trial, and on appeal, the parties disagreed as to whether the term "the prior years' rent" included year five of the original term, as alleged by plaintiff, or applies only after the first year of the renewal period (year six) expires, as alleged by defendant.

If the last sentence of Paragraph 43A applies to the first year of the renewal period, then the base rent for year six could not be less than the rent for year five, which was set by the lease at $128,400 per year or $10,700 per month. However, if it did not apply until the end of year six, as defendant alleges, the base rent amounts for the initial term are irrelevant. This distinction, and the

parties' disagreement as to the application of the last sentence of Paragraph 43A, creates an ambiguity in the terms of the lease.

To resolve this ambiguity, the court viewed the documentary evidence and circumstances leading up to the formation of the lease, see Conway, 187 N.J. at 269, and found that Paragraph 43A and the circumstances surrounding the negotiation of the lease, "support[] an interpretation that the rent was not to be decreased from the previous years' rent." The court also considered the rent obligations during the initial lease term, set forth in Schedule A:

| | | |
|---|---|---|
| Months 1-4 | | $2,250.00 |
| Months 5-6 | | $6,000.00 |
| Months 7-12 | | $7,500.00 |
| Second Year | $96,000.00 | $8,000.00 |
| Third Year | $105,600.00 | $8,800.00 |
| Fourth Year | $116,400.00 | $9,700.00 |
| Fifth Year | $128,400.00 | $10,700.00 |

The language of the lease and the circumstances surrounding its execution demonstrated the parties' intent to increase the rental amount annually. However, rather than changing the words "annual" and "year" in Paragraph 43A to reflect a monthly obligation, the court merely interpreted the last sentence of Paragraph 43A and found that the parties intended to prevent the rent obligation from being reduced "in any year of the lease and any year of the renewal." Accordingly, the court found the base rent amount for year six could not be less

21

than the rent for year five, which was set at $10,700 per month, or $128,400 per year, and by failing to pay $10,700 per month, defendant defaulted on its obligation to pay rent under the lease.

The court's interpretation of the parties' intent in drafting the lease adequately resolved the ambiguity contained in the last sentence of Paragraph 43A. In light of its interpretation of that language, the court determined that Paragraph 43A set a minimum base rent of $10,700 to the renewal period. Thus, although plaintiff may have introduced the extrinsic evidence to vary the terms of the lease, the court did not use the evidence impermissibly. Rather, the court interpreted the parties' intention in drafting the lease "to aid in determining the meaning" of the last sentence of Paragraph 43A, and properly found that defendant failed to pay rent in full. See ibid. The extrinsic evidence was not used for the impermissible purpose of varying the terms of the lease and therefore, its use did not lead to an unjust result. See State v. J.R., 227 N.J. 393, 417 (2017) (quoting R. 2:10-2).

Defendant also argues the appropriate remedy would have been reformation because the trial testimony revealed the use of the words "annual" and "year" in Paragraph 43A constituted an error or mistake. Defendant posits

that unless and until the lease is reformed, it should only pay rent as clearly expressed in the lease, i.e., $11,700 per year.

At the conclusion of the trial, the court found that "the dispute, in [its] judgment, was an interpretation of a contract issue . . . rather than a reformation of the contract." Although the court acknowledged that if plaintiff were seeking reformation of the contract, "that would be arguably beyond the power of the summary dispossess action," the court noted plaintiff was seeking a determination that "the rent should be $10,700 monthly, pursuant to the language of the lease, and does not include a decision as to whether or not there should be a reformation of that clause to modify it to $11,700." Defendant nevertheless argues that the proper remedy would have been reformation, which was outside the scope of the trial court's jurisdiction in a summary dispossess matter. We disagree.

"[A] court hearing a summary dispossess action lacks general equitable jurisdiction" and "[a]lthough the court may consider equitable defenses, it is beyond the power of the court to grant permanent injunctive or other equitable relief to the parties." Benjoray, Inc. v. Acad. House Child Dev. Ctr., 437 N.J. Super. 481, 488 (App. Div. 2014) (quoting WG Assocs. v. Estate of Roman, 332 N.J. Super. 555, 563 (App. Div. 2000)).

23

Reformation of a contract has been used as an equitable remedy where a contract cannot be rescinded. Dugan Constr. Co. v. N.J. Tpk. Auth., 398 N.J. Super. 229, 242 (App. Div. 2008); see also Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 612-13 (1989). Reformation is granted to rectify "either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other." Dugan Constr. Co., 398 N.J. Super. at 242-43 (quoting St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571, 577 (1982)). "The problem normally arises when the agreement fails to specify correctly the terms that the parties agreed upon[.]" Id. at 243 (quoting Edward D. Lord, Inc. v. Mun. Util. Auth., 133 N.J. Super. 503, 507-08 (App. Div. 1975)). "Reformation presupposes that a valid contract between the parties was created but, for some reason, was not properly reflected in the instrument that memorializes the agreement." Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324, 345 (App. Div. 2006) (quoting H. Prang Trucking Co. v. Local Union No. 469, 613 F.2d 1235, 1239 (3d Cir. 1980)). A court will grant reformation only if there is "'clear and convincing proof' that the contract in its reformed, and not original, form is the one that the contracting parties understood and meant it to be." Cent. State Bank v. Hudik-Ross Co., 164 N.J. Super. 317, 323 (App. Div. 1978).

Here, the court did not reform the contract and, despite the extensive testimony that the words "year" and "annual" were a mistake in the lease, plaintiff did not seek the remedy of reformation. Instead, plaintiff relied on the fact that "notwithstanding [the] typo . . . the rest of Paragraph 43A simply did not permit a conclusion that year [six] rent could be any less than the prior year's rent of $10,700 per month." Thus, although reformation would be an appropriate remedy arising out of an error or mistake in the drafting of a contract, that remedy was not at issue in this matter. We are satisfied the court committed no error in using extrinsic evidence to interpret Paragraph 43A to require rent of $10,700 per month during the renewal period.

III.

Defendant contends the court erred in denying its motion to transfer the summary dispossess action to the Law Division and consolidate it with the Law Division action. Defendant reiterates this was a complex commercial tenancy that demanded discovery and required uniformity with the Law Division action and joinder of claims.

"The summary dispossess statute, N.J.S.A. 2A:18-51 to -61, was designed to provide landlords with a swift and simple method of obtaining possession." Benjoray, Inc., 437 N.J. Super at 486. Nevertheless, either party to a summary

dispossession proceeding may move to have the matter transferred to the Law Division, and the court may grant the motion if it deems the issues before it "of sufficient importance." N.J.S.A. 2A:18-60.

We review the trial court's ruling on a motion to transfer for abuse of discretion. See Master Auto Parts, Inc. v. M. & M. Shoes, Inc., 105 N.J. Super. 49, 53 (App. Div. 1969). "[A]buse of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

In general, a motion to transfer a summary dispossess action to the Law Division is granted when "the procedural limitations of a summary action . . . would significantly prejudice substantial interests either of the litigants or of the judicial system itself, and . . . those prejudicial effects would outweigh the prejudice that would result from any delay caused by the transfer." Twp. of Bloomfield, 253 N.J. Super. at 563. The court should consider the following factors in deciding a motion to transfer:

[(1)] The complexity of the issues presented, where discovery or other pretrial procedures are necessary or appropriate;

[(2)] The presence of multiple actions for possession arising out of the same transaction or series of transactions, such as where the dispossesses are based upon a concerted action by the tenants involved;

[(3)] The appropriateness of class relief;[4]

[(4)] The need for uniformity of result, such as where separate proceedings are simultaneously pending in both the Superior Court and the County District Court arising from the same transaction or set of facts, and

[(5)] The necessity of joining additional parties or claims in order to reach a final result.

[Id. at 562-63 (quoting Morrocco v. Felton, 112 N.J. Super. 226, 235-36 (Law Div. 1970)).]

We discern no abuse of discretion in the court's denial of defendant's motion to transfer. The issues in this matter are not complex, do not require discovery, and there are no issues of significant importance that would warrant transfer to the Law Division. The fact that this matter involves a commercial tenancy does not change this result, as defendant suggests. This is a simple summary dispossess action based on the tenant's alleged breach of a lease

---

4 Because this matter did not involve class relief, factor three does not apply.

provision and holding over in possession following a notice to terminate the lease.

Further, the mere fact that a landlord seeks to recover money damages in a Law Division action is not sufficient to warrant a transfer to the Law Division. The tenant may assert a counterclaim against the landlord in the Law Division action, as defendant has done here, join whatever parties it deems necessary to adjudicate its claims, and engage in discovery. Because none of the five factors existed here, the court properly denied defendant's motion to transfer.

IV.

Before addressing defendant's remaining arguments, we address plaintiff's argument on cross-appeal that it was entitled to a judgment of possession under N.J.S.A. 2A:18-53(c)(4).

Plaintiff argued that it pleaded a cause of action for breach of the lease under N.J.S.A. 2A:18-53(c)(4) and defendant was not permitted to cure in accordance with N.J.S.A. 2A:18-55[5] by paying the rent arrears. The court determined that N.J.S.A. 2A:18-53(c)(4) did not apply. This was error.

---

[5] N.J.S.A. 2A:18-55 provides as follows, in pertinent part:

> If, in actions instituted under [N.J.S.A. 2A:18-53(b)], the tenant or person in possession of the demised

"In construing a statute, our 'overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" Bermudez v. Kessler Inst. for Rehab., 439 N.J. Super. 45, 50 (App. Div. 2015) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)). "If the Legislature's intent is clear on the face of the statute, then we must apply the law as written." In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 274 (2017) (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)). Furthermore, "[a]bsent a clear indication from the Legislature that it intended statutory language to have a special limiting definition, we must presume that the language used carries its ordinary and well-understood meaning." Ibid. (quoting State v. Lenihan, 219 N.J. 251, 262-63 (2014)).

N.J.S.A. 2A:18-53(c)(4) applies to the removal of a commercial tenant:

> [w]here such person . . . shall commit any breach or violation of any of the covenants or agreements in the nature thereof contained in the lease for the premises where a right of re-entry is reserved in the lease for a violation of such covenants or agreements, and shall hold over and continue in possession of the demised premises or any part thereof. . . .

premises shall at any time on or before entry of final judgment, pay to the clerk of the court the rent claimed to be in default, together with the accrued costs of the proceedings, all proceedings shall be stopped.

A-5148-16T3

The language of the statute does not specifically limit its application to non-monetary breaches; rather, it provides that removal is appropriate where the tenant commits "any breach or violation of any of the covenants or agreements . . . where a right of re-entry is reserved in the lease for a violation of such covenants or agreements[.]" Ibid. (emphasis added). The plain language of the statute indicates the Legislature intended section (c) to apply broadly to the breach of any covenant in a lease where a right of re-entry is reserved.

The Legislature also drew a distinction between N.J.S.A. 2A:18-53(c)(4) and N.J.S.A. 2A:18-53(b), which permits removal of a commercial tenant "after a default in the payment of rent," by limiting the application of N.J.S.A. 2A:18-53(c)(4) to covenants "where a right of re-entry is reserved in the lease for a violation of such covenants or agreements." Thus, N.J.S.A. 2A:18-53(c)(4) applies to the non-payment of rent where the lease contains a covenant to pay rent and the landlord reserves a right of re-entry for the violation of that covenant.

This matter was properly brought under N.J.S.A. 2A:18-53(c)(4) because the lease contains a covenant to pay rent, as well as a provision granting plaintiff the right of re-entry and possession in the event of defendant's default in the performance of any lease provision, including non-payment of rent.

A-5148-16T3

Accordingly, the court erred in finding that N.J.S.A. 2A:18-53(c)(4) was inapplicable to grant plaintiff a judgment for possession. Plaintiff was entitled to possession under the statute due to defendant's failure to pay rent and surrender possession of the property.

V.

We next address defendant's meritless argument that the court lacked jurisdiction because plaintiff did not properly serve the NOT in accordance with the lease notice provision.

N.J.S.A. 2A:18-53(c)(4) provides, in pertinent part, that a commercial tenant may be removed from the premises:

> after the landlord or his agent for that purpose has caused a written notice of the termination of said tenancy to be served upon said tenant, and a demand that said tenant remove from said premises within three days from the service of such notice. The notice shall specify the cause of the termination of the tenancy, and shall be served either personally upon the tenant or such person in possession by giving him a copy thereof, or by leaving a copy thereof at his usual place of abode with some member of his family above the age of [fourteen] years.

The purpose in N.J.S.A. 2A:18-53(c) of providing notice to a commercial tenant is to "permit the tenant to adequately prepare a defense, since the tenant may contest an alleged breach of a covenant or may raise equitable defenses."

<u>Ivy Hill Park Apartments. v. GNB Parking Corp.</u>, 236 N.J. Super. 565, 570 (Law Div. 1989), <u>aff'd</u>, 237 N.J. Super. 1 (App. Div. 1989).  "Because an action to evict the tenant is normally a summary proceeding devoid of discovery, specification of the cause of termination is a means of adequately advising the tenant of the allegations against which it must defend."  <u>Ibid.</u>  As our Supreme Court stated when construing N.J.S.A. 2A:18-53(c):

> The notice is required to "specify the cause of the termination of the tenancy," and proof that such notice has been served is prerequisite to judgment.  The cause of the termination is jurisdictional, and if at trial evidence is adduced from which a finding could reasonably be made that a proper notice was served and that the specified statutory cause existed, a judgment for possession is conclusive.
>
> [<u>Carteret Props. v. Variety Donuts, Inc.</u>, 49 N.J. 116, 123, (1967) (citations omitted) (quoting N.J.S.A. 2A:18-56).]

A lease may provide for a different manner and time-period for service than contemplated by N.J.S.A. 2A:18-53(c).  <u>Pa. R.R. Co. v. L. Albert & Son, Inc.</u>, 26 N.J. Super. 508, 512-13 (1953).  New Jersey courts have held that a lease termination provision that provides for notice by registered mail may be exercised by certified mail because "the essence of the matter is whether the notice required by the lease was received in time." <u>243 So. Harrison St. Corp. v. Ogust</u>, 113 N.J. Super. 74, 77 (Cty. Ct. 1971).  The purpose of a lease

termination provision requiring service by certified or registered mail is to ensure the defaulting party receives proper notice. See id. at 78 (holding that the intent of the parties, evidenced by the certified and registered mail provision of the lease, sought "to insure the delivery of the notice, and to settle any dispute that might arise between the parties as to whether or not the notice was duly received").

Here, the lease granted plaintiff the right of re-entry upon defendant's default. The termination provision provides that upon defendant's default:

> the Landlord may . . . at any time thereafter, terminate this lease and the terms hereof, upon giving to the Tenant or to any trustee, receiver, assignee or other person in charge of or acting as custodian of the assets or property of the Tenant, five (5) days notice in writing, of the Landlord's intention so to do. Upon the giving of such notice, this lease and the term hereof shall end on the date fixed in such notice as if the said date was the date originally fixed in this lease for the expiration hereof; and the Landlord shall have the right to remove all persons, goods, fixtures and chattels therefrom, by force or otherwise, without liability for damages.

Regarding notices, the lease provided as follows:

> All notices required under the terms of this lease shall be given and shall be complete by mailing such notices by certified or registered mail, return receipt requested, to the address of the parties as shown at the head of this lease or to such other address as may be designated in

writing, which notice of change of address shall be given in the same manner.

Plaintiff did not serve the NOT on defendant by certified or regular mail. Instead, on February 15, 2017, plaintiff personally served defendant with the NOT, and defendant does not dispute it received the notice. Accordingly, we hold that although service was not in strict compliance with the lease notice provision, use of the alternative, and better, method of personal service performed the same function and served the same purpose as the authorized method of service. In accordance with N.J.S.A. 2A:18-53(c), the NOT specified the date and cause of the termination, demanded possession, and provided defendant an opportunity to prepare a defense. Defendant received proper notice of the cause of the termination and had an opportunity to defend. Due process was satisfied.

## VI.

Defendant contends the court erred by not permitting it to assert a Marini defense. We disagree.

Marini recognizes rent abatement as an equitable defense available to a tenant in a summary dispossess action. In Marini, the Court held as follows:

> If, therefore, a landlord fails to make the repairs and replacements of vital facilities necessary to maintain the premises in a livable condition for a period of time

adequate to accomplish such repair and replacements, the tenant may cause the same to be done and deduct the cost thereof from future rents. The tenant's recourse to such self-help must be preceded by timely and adequate notice to the landlord of the faulty condition in order to accord him the opportunity to make the necessary replacement or repair. If the tenant is unable to give such notice after a reasonable attempt, he may nonetheless proceed to repair or replace. This does not mean that the tenant is relieved from the payment of rent so long as the landlord fails to repair. The tenant has only the alternative remedies of making the repairs or removing from the premises upon such a constructive eviction.

[56 N.J. at 146-47.]

A Marini defense can only be used by a tenant "where defects have been asserted as a defense to nonpayment of rent or as a basis for withholding of rental payments." Szeles v. Vena, 321 N.J. Super. 601, 607 (App. Div. 1999) (emphasis added). Where the landlord fails to make the repairs, the tenant may declare a constructive eviction and vacate the premises, see Reste Realty Corp. v. Cooper, 53 N.J. 444, 456-57 (1969); make the repairs and deduct the cost from the rent, see Marini, 56 N.J. at 146; withhold rent and seek an abatement in a non-payment dispossess action or file a separate action to recover rents paid, see Berzito, 63 N.J. at 469-70; or seek the appointment of an administrator to collect rents and make repairs, see Drew v. Pullen, 172 N.J. Super. 570, 575 (App. Div. 1980).

35

Defendant did not assert defects in the premises as a defense to nonpayment of rent and did not withhold rent payment on that basis. Defendant also did not assert a <u>Marini</u> defense at any time seeking to either withhold rent, assert its right to a rent abatement, or avail itself of any of the remedies available to it. Rather, defendant maintained throughout this matter that it had paid the rent in full in accordance with Paragraph 43A and was not required to pay more than $975 per month. Accordingly, the court correctly barred defendant from asserting a <u>Marini</u> defense.

## VII.

Both plaintiff and defendant challenge the award of counsel fees. Defendant argues the award was excessive because it was disproportional to a summary dispossess action and plaintiff failed to establish the reasonableness of the fees requested. Plaintiff counters that the award was not excessive, and argues on cross-appeal that the court erred in severely reducing the amount awarded.

We review an award of attorneys' fees and costs under an abuse-of-discretion standard. <u>Packard-Bamberger & Co. v. Collier</u>, 167 N.J. 427, 444 (2001); <u>Rendine v. Pantzer</u>, 141 N.J. 292, 317 (1995). "Fee determinations by trial courts will be disturbed only on the rarest of occasions, and then only

A-5148-16T3

because of a clear abuse of discretion." Packard-Bamberger, 167 N.J. at 444 (quoting Rendine, 141 N.J. at 317).

In its application for attorneys' fees, plaintiff requested $67,945.59. The court reduced the amount to $38,904.00 plus reasonable costs of $350. In its July 28, 2017 statement of reasons, the court noted a number of reasons for reducing the amount sought. The court noted that at least five attorneys performed services at various hourly rates, and assigned a blended rate of $355 per hour. The court also noted that one of plaintiff's attorneys whose charges were included attended every court appearance, but did not actively participate in the matter. The court found it was unreasonable to expect reimbursement for an attorney to sit as second chair on a landlord-tenant dispossess action. Furthermore, the court noted that the affidavit of services contained redundant services; the billing for the trial brief seemed excessive and redundant; and counsel billed for excessive fees, including transcript fees, witness fees, and excessive copying fees, as well as the fees incurred for a private investigator. The court found that "[i]n reviewing all of the above circumstances . . . the reasonable amount of time spent in this matter is 109.6 hours at the rate of $355.00 per hour for a total legal fee of $38,904.00 plus reasonable costs of $350.00."

In determining the reasonableness of an award, "the threshold issue 'is whether the party seeking the fee prevailed in the litigation.'" Ibid. (quoting N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 570 (1999)). The court should also consider the lodestar calculation, which "is defined as the number of hours reasonably expended by the attorney, multiplied by a reasonable hourly rate." Id. at 445.

In light of these considerations, we find no abuse of discretion in the counsel fees award. The court reviewed counsel's affidavit of services and reduced the lodestar fee based on the nature of the action, the use of multiple attorneys, and the excessive time spent on the trial brief. The court also noted that counsel included redundant services and excessive costs. These determinations were appropriate based on the principle that "no compensation is due for nonproductive time" Rendine, 141 N.J. at 335 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)). The court considered all the relevant factors in reducing the plaintiff's counsel fees application. It "carefully considered the fee requested by plaintiff[], scrutinized the value of the services . . . provided, and evaluated the disparity between the relief initially requested by plaintiff[] and that which was ultimately awarded." Packard-Bamberger & Co., 167 N.J. at 446-47.

Affirmed in part, reversed in part, and remanded to the trial court to enter a judgment for possession.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5148-16T3